MEMORANDUM OF DECISION RE: PLAINTIFF’S MOTION TO REAR-GUE (Pleading No. 125)
GUERNSEY, C.J.
The Plaintiff has moved to reargue this Court’s Memorandum of Decision issued March 21, 2014 on grounds of the Court’s alleged “misapprehension of facts.” The factual background of the events giving rise to this action under the Mohegan Torts Code is set forth in that opinion and will not be repeated. Plaintiff challenges the initial portion of the Court’s finding that the [the Plaintiff] had entered [the VIP Lounge] by means of a staircase at the other end of the lounge, and had clearly seen the guardrails [on either side of the steps on which she fell] as she approached. Inasmuch as this was based on the view of the premises conducted at the start of the trial, the Court, together with counsel, reenacted to the extent possible the view during the hearing on Plaintiffs motion.
There was never any doubt that the accident in which Plaintiff was injured occurred when she mistook some brightly colored steps for a ramp and stepped off, falling violently to the ground. Plaintiffs motion asserts “[t]he fact that the Plaintiff entered the lounge by ramp with guardrails makes her belief that she was exiting the Lounge by ramp with guardrails not speculative, but rather expected.” However, Plaintiffs testimony on this issue was as follows:
*285 Q. And, can you tell us basically where you were coming from and where you were going to?
A. I was invited to the Casino by a fellow employee, his mother invited four of us ladies and we were invited to have breakfast at the VIP lounge and four of us ladies sat down, we had breakfast and they were still eating, and I got up to go to the casino. Then I just got up, walked away and I thought there was a ramp and I walked right off. That was It,
Q. Now, when you entered the area where you had breakfast, did you come up those stairs or did you come another way?
A. I don’t remember how I got there. I don’t remember.
During the initial view of the scene, numerous staircases were observed by which Plaintiff could have entered the VIP Lounge.[1] Far from supporting Plaintiffs argument in her memorandum of law that she entered by means of a ramp, the reenacted view resulted in the discovery of approximately a half dozen stairways, one ramp, and one large, absolutely flat entrance from the Concourse.[2] However the Plaintiff may have entered the VIP Lounge, it was very likely not by means of a ramp.[3]
The reenacted view of the scene also undercuts Plaintiffs claims that the exit stairway where she fell appeared to be a ramp, rather than steps. As previously noted, the two guardrails are obvious (and were observed by the Plaintiff as she approached), and the contrast between the diagonally placed blue tile leading to the steps and the bright red carpet covering the steps is visually arresting. What became apparent during the reenacted view was that, by the time one approaching the steps reached a point approximately six feet from the first step, it is clear that they could not possibly be a ramp. This is not as apparent in Defendant’s Exhibit D-H2, a photograph taken from a point further away from the steps. From a slightly closer point of view, it becomes obvious that the very limited outward extent of bright red carpet covering the steps (extending for three steps) was far too short to be a ramp, and if a ramp would have been impossibly steep.
Plaintiff disputes the Court’s original conclusion that the issue of causation, essential to Plaintiffs case, was left to speculation. The evidence as to the link between the alleged BOCA Code violation and the Plaintiffs mistaken belief that the stairway down which she fell was a ramp is limited to the opinion of Steven Keedle, Plaintiffs expert. The Plaintiff herself never addressed the subject of why she thought the *286 stairway was a ramp or what might have alerted her to her mistake.
This Court has already specifically declined to accept Keedle’s opinion that the stairway “appears more like a ramp.” For purposes of clarification, the Court specifically finds that the stairway appears to be a stairway and cannot reasonably be mistaken for a ramp. As for Keedle’s assertion that the third guardrail claimed to be required by the applicable BOCA Code (down the middle of the stairway) would have alerted the Plaintiff to the fact that this was a stairway while the two guardrails that she did observe did not, the Court will reiterate that this rests on speculation.[4] Again, for purposes of clarification, the Court finds that the Plaintiff has not proved that compliance with Keedle’s interpretation of the BOCA Code requirements would have alerted the Plaintiff to her mistake.
Nevertheless, the Court will address, as requested by the Plaintiff, the issue of whether the stairway down which Plaintiff fell was in compliance with the applicable BOCA Code at the time of its construction. Specifically, the Plaintiff reargues Keedle’s assertion that the stairs down which the Plaintiff fell were not in compliance with Section 1014.7 of the 1996 BOCA[5] requirement that “[¡Intermediate handrails are required so that all portions of the required width of the stairs are within 30 inches of a handrail.” Keedle correctly pointed out that the guardrails are not perpendicular, and that while one of the steps appeared to be 60 inches (and thus in compliance), two were greater than 60 inches wide, with the result that not all portions were within 30 inches of a handrail.
This position was countered by the report and testimony of David Atkinson, Building Official for the Mohegan Tribe, who testified that the issue was the “required width” of the egress stairway,[6] which he computed to be 60 inches. How this works in conjunction with the Section 1014.7 requirement of intermediate handrails is spelled out in the Commentary:
It should be noted that the distance to the handrail applies to the “required width” of the stairway. If a stairway is greater than 60 inches in width, but only 60 inches are required in accordance with Section 1014.2, intermediate handrails are not required. Adequate safety is provided since the occupants can use the 30 inches within the handrails provided on each side (see Figure 104.7).
The second diagram in Figure 1014.7 is useful in demonstrating that the “required width” of 60 inches can be made up of a travel path of 30 inches to the handrail on each side, with no requirement for an intermediate handrail. Atkinson further pointed out that putting an intermediate handrail in the location where the Plaintiff fell would have violated Section 1014.3’s requirement that “[a]ll means of egress *287 stairways shall not be less than 44 inches (1118 mm) in width.”
While the Court finds that the wording of Section 1014.7 relied upon by Keedle to be unnecessarily confusing, the Commentary is explicit. Although not essential to the Court’s decision inasmuch as that the Plaintiff has failed to prove that the stairs appeared to be a ramp, that the Plaintiffs belief that the stairs were a ramp was reasonable, or that had there been an intermediate handrail the same would have alerted the Plaintiff to her mistake, in order to facilitate appellate review the Court finds that Atkinson’s interpretation of the BOCA Code’s requirement concerning intermediate handrails is the correct one, and that the Plaintiff has not proved any violation of any BOCA Code requirement on the part of the Defendant.
Finally, Plaintiff has appealed to this Court that as a matter of fairness and justice, the Plaintiff is entitled to compensation for her injuries. In the absence of proof by a preponderance of the evidence that her injuries resulted from a breach of a legal duty on the part of the Defendant, such is beyond the authority of this Court despite sympathy for this Plaintiff.
The Court has considered the instant motion as one filed under Conn. Prac. Bk. § 11-11.
Plaintiffs Motion is denied.

.This includes the stairway by which the Court entered the VIP Lounge, in the presence of counsel, during the initial view. The expected clarification at trial as to how the Plaintiff entered the area never emerged, and during the initial view there was no objection to the Court’s using this point of entry; inasmuch as one purpose of this part of the view was to retrace the steps of the Plaintiff, the Court’s conclusion at the time that entry was gained by a stairway and not a ramp was, and remains, reasonable. The reenacted view underscored this conclusion.

. This entrance from the Concourse was stipulated by Plaintiff's counsel not to be the ramp to which he had referred in his motion. Plaintiffs deposition testimony that she entered "from the casino" could, as argued by the Defendant, indicate that she entered from the lower gambling area by a staircase, or by the flat area from the Concourse.

. Put another way, there are small stairways almost all over the VIP Lounge area, but very few ramps. Plaintiff’s counsel’s attempt to distinguish between two stair and three stair stairways is irrelevant to the stairway v, ramp issue.

, No evidence was introduced as to how many guardrails would be required if the stairway were a ramp, nor was any evidence introduced that the BOCA Code played any part in forming Plaintiffs opinion on the ramp/stairway question.

. The 1996 Code adopted by the Building Officials and Code Administrators International, Inc. (BOCA) has been adopted by the State of Connecticut as part of the State Building Code, § 29-255-lc; in 2009 the 2005 Connecticut Building Code, with the 2009 Amendment, was adopted by The Mohegan Tribe as its building code, with the Tribal Building Official taking on the duties of the “Local or Municipal Building Official” in the State Code. MTC § 5-61. The area in question was constructed under the 1996 BOCA Code.

.His testimony regarding this computation, based on assumed occupancy, is set forth in the prior opinion and will not be repeated.